**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                          |   |                        |
|--------------------------|---|------------------------|
|                          | * |                        |
| **RHONDA KNOX,**         | * |                        |
| **Plaintiff**            | * |                        |
| **v.**                   | * | **CIVIL NO.  JKB-17-1384** |
| **MAYOR & CITY COUNCIL**     | * |                        |
| **BALTIMORE CITY** *et al.,* |   |                        |
| **Defendants**           | * |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

### I.  Background

 Plaintiff Rhonda Knox filed this suit claiming employment discrimination in the form of sexual harassment, retaliation for engaging in protected activity, federal civil rights violations, violations of state law, and acts of tortious conduct.  (Compl., ECF No. 1.)  The named Defendants are the Mayor and City Council of Baltimore City ("City"), Fabian Lewis, and Yolanda Cason.  Following the filing of a motion to dismiss,[1] Knox filed an amended complaint (Am. Compl., ECF No. 14), to which the City and Cason filed a motion to dismiss (City Defs.' Mot., ECF No. 16) and to which Lewis filed a counterclaim (Countercl., ECF No. 17) and a motion to dismiss (Lewis's Mot., ECF No. 20).  In turn, Knox filed a motion to dismiss Lewis's counterclaim (Knox's Mot., ECF No. 24.)  The motions have been briefed (ECF Nos. 21, 25, 26, 27) and are ready for decision.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2016).  The motions will be granted in part and denied in part.

---

[1] The original motion to dismiss (ECF No. 8) is moot.

## II.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## III.  Allegations of the Complaint

Knox is a female who has been working with the City's Department of Transportation ("DOT") in the Safety Division since 2004.  (Am. Compl. ¶ 13.)  Her initial position was that of a Parking Control Agent.  (*Id.*)  On September 26, 2013, she was promoted to Transportation Enforcement Supervisor and began reporting to Lewis, who was Deputy Chief of the DOT Safety Division.  (*Id.* ¶ 14.)  At that time, Lewis began making lewd comments to her and engaging in unwanted physical touching.  (*Id.*)  In October 2013, Lewis began making "inappropriate sexual comments towards her while at work."  (*Id.* ¶ 15.)  In November 2013, Lewis entered Knox's office, "grabbed her and kissed her on the mouth, then stated that she

wouldn't be a supervisor if it wasn't for him." (*Id.* ¶ 16.) By January 2014, Lewis "had begun regularly groping Ms. Knox when others were not present." (*Id.* ¶ 17.)

In early 2014, Knox informed Lt. Caroline Brooks, a higher-ranking supervisor[2] within the Safety Division, of Lewis's behavior. (*Id.* ¶ 18.) Brooks's initial comment to Knox was that Lewis "was just a dirty old man." (*Id.*) Brooks then attended a meeting with Knox and Lewis "and specifically told Mr. Lewis the harassment would need to stop or Lt. Brooks would report him." (*Id.* ¶ 19.) Brooks told Knox that she, Brooks, had told Cason, Chief of the Safety Division, about the alleged harassment. (*Id.* ¶ 20.) After the meeting of Brooks, Lewis, and Knox, Lewis changed Knox's schedule (*id.* ¶ 21), but Knox provides no particulars as to that schedule change. Knox alleges Lewis made "threats of other retaliation" (*id.*), but provides no factual content as to what those threats were. While still in the six-month probationary period for her new position of Traffic Enforcement Supervisor, Knox "became nervous that she would face further retaliation, or even be fired, if she did not respond to Mr. Lewis's retaliatory behavior and continued sexual solicitations." (*Id.*)

Knox alleges another officer in the same division complained of harassment and was relocated as a result (*id.* ¶ 22), but Knox does not specify who that harasser was, when the harassment occurred, whether it was sexual harassment, and whether the relocation was welcomed as a protective measure or regarded as a punitive action.

Lewis began sending text messages to Knox, asking her to take and send nude pictures of herself while she was at work. (*Id.* ¶ 23.) Knox alleges the text messages "conveyed that if the nude photographs or videos were not sent to him, he would not approve [her] request for overtime hours, scheduling requests, or requests for additional staffing." (*Id.* ¶ 24.) Knox

[2] The Court infers that Knox means Brooks was a higher-ranking supervisor as compared to Knox, rather than being a higher-ranking supervisor to Lewis, who was Deputy Chief of the DOT Safety Division and, consequently, only one step down from Cason, the Chief of the DOT Safety Division.

alleges Lewis's text messages "contained lascivious comments, including [his] saying 'I want to have you for lunch' and 'I'm sitting outside of your house.'" (*Id.* ¶ 25.) She alleges her "nonconsensual responses of sending nude photographs [were] in exchange for receiving proper staffing, approval of overtime, and appropriate scheduling." (*Id.* ¶ 3.) One time, Lewis told Knox "he had a pink dildo in his briefcase and wanted to stick it in her butt." (*Id.* ¶ 26.)

Knox took a leave from work of unspecified length in August 2015 "due to her anxiety." (*Id.* ¶ 27.) In November 2015, Lewis called Knox into a storeroom in the office, and, when she entered the storeroom, Lewis ejaculated on her arm and her sweater. (*Id.* ¶ 28.) Knox alleges she never welcomed or consented to Lewis's sexual harassment or advances; instead, she responded out of fear of losing her job or because she wanted "to attain work related compensation as was afforded to other employees without such demands." (*Id.* ¶ 29.) She alleges that male employees of DOT were never subjected to Lewis's "harassing behavior and retaliatory actions." (*Id.* ¶ 60.)

Although she was initially reluctant to make a complaint against her supervisor based on her fear of retaliation, in December 2015, Knox filed a formal complaint with Cason and the Department's Inspector General. (*Id.* ¶¶ 31, 32.) After the complaint was filed, and allegedly pursuant to Cason's directives, Knox's duty shift changed five times, which Knox alleges was "a particularly cruel hardship" for her because she is a mother of school-aged children and she had to make arrangements to get her children off of the bus and to make other accommodations to care for her family. (*Id.* ¶ 33.) Knox alleges the schedule changes negatively affected both her productivity in her work and her quality of life outside of work. (*Id.*)

Knox also alleges she was assigned individual directives and assignments not given to others with her same rank and title, adding to her workload and resulting in unnecessary stress

and anxiety (*id.* ¶ 34), but she does not provide any details as to these additional directives and assignments, other than to say that Cason assigned her individual directives (*id.* ¶ 5). She alleges the schedule changes and additional directives and assignments were a direct result of her complaint against Lewis. (*Id.* ¶ 35.) Knox additionally says she was informed she needed to purchase a new cell phone because she had lost her cell phone's stylus, but she persuaded "her employers" to make her responsible only for purchasing a new stylus, not a new cell phone (*id.*); Knox does not say who informed her of this requirement, but says others in her department have not been held to this requirement (*id.*).

Knox alleges that, after she filed her formal complaint against Lewis, an investigation commenced and at least fifteen other women came forward and complained of similar misconduct by Lewis. (*Id.* ¶ 36.) Lewis was provided a "pretermination" letter, which notified him he was being recommended for termination. (*Id.* ¶ 37.) Before termination occurred, Lewis "quietly resigned." (*Id.*) The date of his resignation is not alleged.

In March 2016, Knox filed a complaint against Cason with DOT's Department of Human Resources. (*Id.* ¶ 38.) Knox does not indicate the outcome of that complaint.

Knox's amended complaint filed in this Court sets out twelve counts:

- Count I against City: Hostile Environment Sexual Harassment – Knox concedes this count is brought under Title VII of the Civil Rights Act. (Pl.'s Opp'n to Defs.' Mot. Dismiss 6, ECF No. 15.)

- Count II against City: *Quid Pro Quo* Sexual Harassment – Knox also concedes this count is brought under Title VII of the Civil Rights Act. (*Id.*)

- Count III against City, Cason, and Lewis: Civil Rights Act Due Process Claim – the Court infers this is brought under 42 U.S.C. § 1983.

- Count IV against City, Cason, and Lewis:  Civil Rights Act Equal Protection Claim – the Court infers this is also brought under 42 U.S.C. § 1983.

- Count V against City:  Sexual Harassment under Maryland Fair Employment Practices Act, [State Government] Code § 20-606:  Hostile Work Environment and Quid Pro Quo

- Count VI against City, Cason, and Lewis:  Maryland Constitution Articles 24 & 26 Due Process Claim

- Count VII against City, Cason, and Lewis:  Maryland Constitution Articles 24 & 26 Equal Protection Claim

- Count VIII against City, Cason, and Lewis:  Maryland Constitution Article 46 Gender Discrimination

- Count IX against City, Cason, and Lewis:  Maryland Constitution Longtin-type Pattern or Practice Claim

- Count X against City, Cason, and Lewis:  Negligent Hiring, Training, Retention & Supervision

- Count XI against City, Cason, and Lewis:  Negligent Entrustment

- Count XII against Lewis:  Assault and Battery

### IV.  Allegations of the Counterclaim

Lewis's counterclaim presents a different set of allegations indicating Knox was the aggressor in their relationship.  Lewis alleges he is sixty-five years old, a "gentleman," and that he served as the Superintendent of Parking for the City from October 2012 until February 2016.  (Countercl. ¶ 5, ECF No. 17.)  While serving in that capacity, he helped to manage parking enforcement and school crossing guard programs.  (*Id.*)

After Knox's appointment to parking control supervisor in September 2013, Lewis met with her "and all the other newly appointed supervisors to discuss expectations and clarify performance metrics." (*Id.* ¶¶ 7, 8.) "At the end of that meeting, Mrs. Knox exited the room where the meeting was held, immediately returned, and asked Mr. Lewis if she could speak with him privately. Mr. Lewis informed her that she could and she went on to inform him of intimate and personal details of her married life." (*Id.* ¶ 8.) Lewis alleges Knox informed him that Knox's husband was cheating on her, staying away from home every Friday night and returning home Saturday afternoon. (*Id.* ¶ 9.) Knox further informed Lewis that she was having health issues. (*Id.* ¶ 10.) When Lewis told her his spouse was a healthcare provider and that he would ask his wife about Knox's possible condition, Knox "jumped up, grabbed Mr. Lewis without his consent, kissed him on his lips, and stated, 'There is more where that came from.'" (*Id.* ¶ 11.) Lewis immediately informed Knox "he did not welcome her assaulting him." (*Id.* ¶ 12.)

After that incident, Knox "began the relentless pursuit of Mr. Lewis to engage in sex with her." (*Id.* ¶ 13.) Knox routinely began making lewd comments to Lewis and engaging in unwanted physical touching of him. (*Id.* ¶ 14.) Lewis told Knox her conduct was inappropriate, and she responded, "'I do this with everybody. What makes you think you are so special?'" (*Id.* ¶ 15.) In October 2013, Knox told Lewis she was sexually unsatisfied, saying "her husband suffered from premature ejaculation and was thus unable to satisfy her sexually," and asked Lewis's advice "as to how she could ensure that her husband could sustain an erection during sex." (*Id.* ¶ 17.)

Knox began to call Lewis "on a nearly daily basis and would engage in 'phone sex' in which she would imply that she was masturbating while she was on the phone with Mr. Lewis." (*Id.* ¶ 18.) On multiple occasions, Knox made videos of herself masturbating, brought them into

Lewis's office, and showed them to him. (*Id.* ¶ 19.) She also sent nude pictures of herself to Lewis on multiple occasions. (*Id.* ¶ 20.) Additionally, she told Lewis she had worn out her vibrator and needed another one so she could continue recording videos. (*Id.* ¶ 21.) Lewis told her she should buy a new one on Amazon, but Knox told Lewis she did not want her husband to know she was buying sex toys and asked Lewis to purchase it for her, providing Lewis with the website and the ordering details when he agreed to do so. (*Id.* ¶¶ 22-25.) Lewis bought the vibrator and gave it to Knox. (*Id.* ¶ 26.) Afterwards, Knox would take photos showing the vibrator inserted into her body and would send the pictures to Lewis. (*Id.* ¶ 27.)

Knox would also come into Lewis's office, sit on his lap, and "wiggle her body against his." (*Id.* ¶ 28.) She also entered his office, exposed her breasts to him, touched her breasts with her mouth, and invited him to suck them. (*Id.* ¶ 29.) On at least thirteen occasions from November 2013 to November 2015, Knox called Lewis, told him she was "wet," and invited him to meet her somewhere. (*Id.* ¶ 32.) On those occasions, Knox exposed her breasts, fondled Lewis's genitals, and "force[d]" him to fondle her genitals and insert his fingers into her vagina. (*Id.* ¶ 33.) On one of those occasions in November 2015, Knox removed Lewis's "penis, against his will, from his pants, and massaged his penis causing him to ejaculate." (*Id.* ¶ 34.)

Lewis alleges he insisted Knox's behavior towards him must stop and that Knox became angry and filed a complaint with the City. (*Id.* ¶¶ 37-39.) The City found no merit to Knox's complaint. (*Id.* ¶ 40.) "Lewis determined that he . . . no longer wished to work for the City of Baltimore, and resigned his position in February 2016." (*Id.* ¶ 41.)

Lewis's counterclaim has nine counts:

- Count I for Malicious Use of Process

- Count II for Tortious Interference in a Contractual Relationship

- Count III for Fraud

- Count IV for Defamation

- Count V for Wrongful Interference in a Contractual Relationship

- Count VI for Intentional Infliction of Emotional Distress

- Count VII for Harassment

- Count VIII for Tortious Interference in a Marital Relationship

- Count IX for Battery

The Court shall address each pleading in turn.

## V. *Sufficiency of the Complaint*

Preliminarily, City Defendants seek to dismiss nearly the entire complaint (nine counts out of twelve) as a "shotgun pleading." (City Defs.' Mot. 1, ECF No. 16; argument adopted by Lewis in Lewis Mot. 1, ECF No. 20, as to Counts I through XI.) Whatever validity that concept has in other circumstances, *see, e.g.*, *Rufus v. Seneca Mortgage Servicing, LLC*, Civ. No. PJM-17-351, 2017 WL 2591528, at *2 (D. Md. June 14, 2017) (*pro se* complaint "almost entirely incomprehensible, consisting of scatter shot, conclusory, and formless allegations without appropriate specific factual underpinnings tying the claims to any cognizable claims"), it is not a helpful label here in assessing the sufficiency of Knox's complaint. Relying upon the governing *Iqbal/Twombly* standard interpreting Federal Rule of Civil Procedure 8(a), this Court does not find Knox's complaint to be "entirely incomprehensible" or "scatter shot." Whether Knox's complaint meets the Rule 8(a) standard can be and will be determined count by count. Further, Defendants take issue with Knox's inclusion of a claim of harassment and a claim of retaliation in the same count. Although it is often helpful to the Court for each claim to be asserted in a separate count, it is not required by the Federal Rules of Civil Procedure. According to

Rule 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." This secondary argument is, therefore, without merit.

### A.  Count I against City:  Hostile Environment Sexual Harassment

As earlier noted, Count I is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  Within Count I, and despite its label pertaining to sexual harassment, Knox alleges both harassment and retaliation for engaging in protected activity.  (Am. Compl. ¶¶ 58, 65.)  The Court concludes Knox's complaint adequately states a claim for relief as to both sexual harassment and retaliation as asserted in Count I.  She has plausibly alleged she was a member of a protected class, that she was subjected to sexual harassment, and that male employees were not similarly treated.  Further, she has plausibly, albeit weakly, alleged that her working conditions became more onerous after she filed her complaint with Cason.

### B.  Count II against City:  Quid Pro Quo Sexual Harassment

Count II is also brought under Title VII.  To the extent Count II pleads a separately cognizable form of harassment, the Court concludes it, too, states a claim for relief.

### C.  Count III against City, Cason, and Lewis:  Civil Rights Act Due Process Claim

This count and Count IV are brought under 42 U.S.C. § 1983, claiming denial of federal constitutional rights.  In Count III, Knox alleges she was denied due process "insofar as her employer, a government agency, hired and continued to employ a known sexual harasser to act as her supervisor and as an agent of the government."  (*Id.* ¶ 84.)  She also claims she was denied due process when her "right to be secure in her person in the workplace . . . was violated when Mr. Lewis physically approached the Plaintiff to make lewd comments, threatened her physical safety and security by offensively touching her, and created a hostile environment through

continued and excessive sexual harassment." (*Id.* ¶ 85.) Finally, she claims her right to due process was violated when she "was retaliated against by her supervisors for reporting the sexual harassment committed by Mr. Lewis, being re-victimized for asserting her rights in the workplace." (*Id.* ¶ 86.)

Thus, she complains the City, Cason, and Lewis violated her right to due process when she was subjected to both Lewis's alleged sexual harassment and Cason's alleged retaliation for filing her complaint against Lewis. Defendants[3] argue Knox cannot assert a due process claim in this instance. (City Defs.' Mot. 10-11.) The Court agrees.

The Supreme Court has been very clear that a claim of denial of substantive due process, as is asserted by Knox, does not lie when a more explicit textual source of constitutional protection exists. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). When such constitutional protection exists, then that provision, not the more generalized notion of substantive due process, is the proper guide for analyzing a claim of denial of substantive due process. *Id. See also Hawkins v. Leggett*, 955 F. Supp. 2d 474, 495 (D. Md. 2013) (plaintiff cannot "piggyback" substantive due process claim onto equal protection claim), *aff'd*, 558 F. App'x 327 (4th Cir. 2014) (unpublished). Here, Knox's claim of a governmental actor sexually harassing her may be evaluated under the Equal Protection Clause of the Fourteenth Amendment. Further, the Supreme Court has also concluded, "Neither the text nor the history of the Due Process Clause supports [a plaintiff's] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992). Consequently, Knox's substantive due process claim based on sexual harassment is without merit. Moreover, her retaliation claim—

---

[3] Lewis adopted all of the City Defendants' arguments, where relevant, in his motion to dismiss. (Lewis's Mot. Supp. Mem. 1.) Hence, when applicable, the three Defendants will be referred to collectively.

premised upon asserted retaliation for her engagement in protected activity by filing a complaint against Lewis as to the alleged sexual harassment—cannot be considered a due process claim. This alleged retaliation, presuming it occurred, is made actionable only by Title VII, as noted in Part V.C, *infra*. The Constitution's "Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm." *Evans v. Chalmers*, 703 F.3d 636, 646 n.2 (4th Cir. 2012).

Defendants' motions to dismiss Count III will be granted.

### D. Count IV against City, Cason, and Lewis: Civil Rights Act Equal Protection Claim

Knox asserts that both the alleged sexual harassment and the alleged retaliation were a denial of equal protection of the law because of her gender. (Am. Compl. ¶ 90.) Taking the harassment claim first, the Court concludes Knox has stated a claim for relief only as to Lewis in his individual capacity. She has not adequately alleged liability by the City or Cason, neither of whom may be held liable under a theory of *respondeat superior*. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

As to the City, she alleges in vague, conclusional terms that DOT had a pattern or practice of sexual harassment of women and of "covering up" such behavior. (*Id.* ¶¶ 39, 50.) In order to fix liability on the City, Knox is required to allege sufficient factual content permitting a reasonable inference that the conduct complained of "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers" or is a custom or usage of the City that "could well be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (internal quotation marks omitted). Knox has failed to do so. For that reason, neither the City nor Cason in her official capacity nor Lewis in his official capacity is a proper defendant for

Knox's equal protection claim. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (noting governmental entity is "real party in interest" in official capacity suit).

Cason could be held liable in a supervisory capacity under § 1983 if Lewis's alleged sexual harassment could be attributable to Cason by showing the following three elements:

> (1) . . . the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) . . . the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
>
> (3) . . . there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). "A supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (also noting single incident or isolated incidents ordinarily not enough to establish supervisory liability).

Knox's complaint falls short of the *Shaw* standard. The only allegations as to Cason's knowledge are that Brooks told Lewis in early 2014 she would report him if the behavior did not stop and that she told Cason "about the harassment," but "Cason did not care." (Am. Compl. ¶¶ 19, 20.) These allegations do not give a clear picture of the substance of what Brooks actually said to Cason. Nor do they provide a factual basis for Brooks's reported impression that "Cason did not care." Knox's complaint does not provide context for Brooks's conversation with Cason, *i.e.*, whether Brooks decided to tell Cason even though, as far as Brooks might have known, the alleged harassment had not continued or whether she told Cason because she was aware the

alleged harassment was continuing. In any event, the complaint is inadequate in alleging the necessary factual support for a claim of supervisory liability against Cason. Certainly, the complaint does not support an inference of tacit authorization. Further, "[d]eliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The minimal allegations relating to what Brooks said to Cason and about Cason do not suffice. What is clear from the complaint is that Knox filed a formal complaint about Lewis with Cason in December 2015. However, Knox does not allege that Lewis's alleged harassment of her continued after she filed the complaint. She has failed to state a claim of supervisory liability against Cason.

With regard to the retaliation claim, that is not appropriately asserted as a violation of Knox's right to equal protection. "'A pure or generic retaliation claim . . . does not implicate the Equal Protection Clause.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999) (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997)). Freedom from retaliation for making complaints of discrimination "is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995), *quoted in Watkins*, 105 F.3d at 1355; *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989) (same).

Lewis has made two other arguments against Count IV: (1) he contends he is entitled to qualified immunity and (2) he asserts he was not acting under color of state law. Neither argument has merit. He does not, and cannot, seriously suggest that sexual harassment was not regarded as a cognizable claim under the Equal Protection Clause when the alleged harassment began in 2013. *See Davis v. Passman*, 442 U.S. 228, 234-35 (1979) (Equal Protection Clause confers on public employee federal constitutional right to be free from gender discrimination);

*Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (intentional sexual harassment of employees by persons acting under color of state law violates Fourteenth Amendment). Additionally, the Court has already concluded Knox has adequately stated a claim against Lewis for the alleged harassment. Thus, his claim of qualified immunity is without merit. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (qualified immunity not applicable when facts support violation of constitutional right and right was clearly established at time of alleged misconduct).

As for Lewis's argument regarding "acting under color of state law," *see* 42 U.S.C. § 1983, the Court supposes he suggests an escape from potential liability based on his employment with the City, not the State of Maryland. If that is his argument, then it bears no weight. The watershed decision of *Monell* would have been decided quite differently if employees of municipalities were not deemed to be acting under color of state law. The Court concludes Lewis's alleged conduct was sufficiently alleged to have been under color of state law, as that term is used in § 1983.

Defendants' motions to dismiss will be granted on Count IV as to the City, Cason in both her individual and official capacities, and Lewis in his official capacity on the harassment claim under the Equal Protection Clause. Count IV's retaliation claim will be dismissed as to all Defendants. Lewis remains a Defendant in his individual capacity in Count IV on the sexual harassment claim under the Equal Protection Clause.

### E. Count V against City: Sexual Harassment under Maryland Fair Employment Practices Act, [State Government] Code § 20-606: Hostile Work Environment and Quid Pro Quo

MFEPA is considered the Maryland state law analogue of Title VII, and consequently, federal cases interpreting Title VII serve as guidance for Maryland courts in their interpretation of MFEPA. *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007). Having found

Knox's complaint to have sufficiently stated a claim under Title VII for alleged sexual harassment, the Court also concludes Count V states a claim for relief.

### F. Count VI against City, Cason, and Lewis: Maryland Constitution Articles 24 & 26 Due Process Claim

The Court presumes Knox's complaint means to refer to Articles 24 and 26 of Maryland's Declaration of Rights. The Declaration of Rights is interpreted with Maryland's Constitution as one instrument, *Mayor of Baltimore v. State of Maryland ex rel. Board of Police*, 15 Md. 376, 377 (Md. 1860), but they nevertheless have separately numbered provisions. Even so, an alleged violation of the Declaration of Rights is considered to be a constitutional claim. *Okwa v. Harper*, 757 A.2d 113, 139-40 (Md. 2000).

Maryland courts recognize that Article 24 protects an individual's right to substantive due process. *Powell v. Md. Dep't of Health*, 168 A.3d 857, 873-74 (Md. 2017). Article 24 is construed *in pari materia* with the Fourteenth Amendment's Due Process Clause of the federal constitution. *Doe v. Dep't of Pub. Safety and Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009). Accordingly, "when applying Article 24, 'decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.'" *Washington v. Maryland*, 148 A.3d 341, 354 (Md. 2016) ("We have only interpreted Article 24 more broadly than the Fourteenth Amendment when 'fundamental fairness demanded that we do so.'"). This Court has already decided that Knox's federal due process claim is foreclosed by Supreme Court precedent. As a result, the Court concludes Knox's state due process claim is without merit.

The Court notes that Article 26, also invoked by Knox as a source of a right to substantive due process, has no relation to her case. Article 26 is the Maryland state law analogue to the federal constitution's Fourth Amendment and is concerned with warrants, searches, and seizures. *See Bass v. Maryland*, 35 A.2d 155, 157 (Md. 1943). Knox has not

plausibly alleged she was the subject of either a search or a seizure, with or without a warrant, and her claim based on Article 26 has no merit.

Count VI will be dismissed in its entirety.

### G. Count VII against City, Cason, and Lewis: Maryland Constitution Articles 24 & 26 Equal Protection Claim

Article 24 is also regarded in Maryland courts as embodying the principle of equal protection as expressed in the Fourteenth Amendment to the federal constitution. *Okwa*¸ 757 A.2d at 141; *Hargrove v. Maryland Retirement System*, 529 A.2d 1372, 1377 (Md. 1987). Although the state interpretation of Article 24 is generally the same, the available remedies vary from those available under 42 U.S.C. § 1983. *DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999). Under Maryland law, "neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *Id.* Further, the distinction of official versus personal capacity is not recognized under Maryland law for state constitutional violations. *Id.* at 371-72. Moreover, local governmental entities in Maryland "do . . . have *respondeat superior* liability for civil damages resulting from State Constitutional violations committed by the agents and employees within the scope of the employment." *Id.* at 372. Even so, the principle of *respondeat superior* may be limited by Maryland's Local Government Tort Claims Act. *Id.* at 373.

The Court has already concluded that Knox has plausibly alleged a claim against Lewis for a violation of equal protection based upon Lewis's alleged sexual harassment of her but not a violation based upon retaliation for engaging in protected activity; thus, the portion of Count VII pertaining to alleged retaliation will be dismissed as to all Defendants. Beyond that, she has not alleged that Cason sexually harassed her, and Knox has not adequately alleged supervisory liability against Cason. Nor is Cason either Lewis's employer or a local governmental entity to

be held liable under a theory of *respondeat superior*. As a result, Count VII will be dismissed as against Cason.

As for the City, the doctrine of *respondeat superior* is the only potential basis of its liability, but that doctrine depends upon Lewis's actions having been undertaken within the scope of his employment. *Tall v. Board of School Comm'rs of Balt. City*, 706 A.2d 659, 665 (Md. Ct. Spec. App. 1998). Case law from this Court has routinely found that an employee's sexual harassment of another employee is *not* within the scope of employment. *See, e.g.*, *Anderson v. Johns Hopkins Bayview Medical Center, Inc.*, Civ. No. JFM-16-1567, 2017 WL 220136, at *3-4 (D. Md. Jan. 18, 2017); *Samuels v. Two Farms, Inc.*, Civ. No. DKC-10-2480, 2012 WL 261196, at *10 (D. Md. Jan. 27, 2012) (collecting cases, noting application of *Tall* standard to sexual harassment, and finding no employer liability). Thus, Count VII will be dismissed as against the City.

As with Count VI, Knox's reliance on Article 26, which deals with searches, seizures, and warrants, is not a proper basis for assertion of an equal-protection claim. Count VII remains viable only against Lewis for alleged sexual harassment.

### H. Count VIII against City, Cason, and Lewis: Maryland Constitution Article 46 Gender Discrimination

Article 46 of Maryland's Declaration of Rights states, "Equality of rights under the law shall not be abridged or denied because of sex." A viable claim of gender discrimination under Title VII is sufficient to state a claim against a governmental employer for violation of Article 46. *Penhollow v. Bd. of Comm'rs for Cecil Cty.*, 695 A.2d 1268, 1287 (Md. Ct. Spec. App. 1997), *cited in Hudock v. Kent Cty. Bd. of Educ.*, Civ. No. CCB–14–2258, 2015 WL 1198712, at *10 n.5 (D. Md. Mar. 16, 2015). Since the Court has already concluded Knox has adequately stated a claim under Title VII for gender discrimination, it now concludes that

Count VIII is properly brought against the City. However, Knox has cited no authority in Maryland case law for the proposition that Article 46 is an appropriate basis for a claim against anyone other than a governmental employer. Consequently, Count VIII will be dismissed against Cason and Lewis.

### I. Count IX against City, Cason, and Lewis: *Maryland Constitution Longtin-type Pattern or Practice Claim*

Although Maryland's Declaration of Rights "Article 24 provides protection to individuals against unconstitutional 'pattern [*sic*] or practices' of municipalities," *Prince George's County v. Longtin*, 19 A.3d 859, 887 (Md. 2011), Knox's complaint falls short in adequately alleging factual content to permit a reasonable inference that the City had a pattern or practice of encouraging or condoning either sexual harassment or retaliation for engaging in protected activity. *See* Part V.D, *supra*. Further, the *Longtin* case only addresses the potential liability of local municipalities for pattern-or-practice violations of state constitutional rights. It does not permit actions against individuals such as Cason and Lewis. Count IX will be dismissed against all Defendants.

### J. Count X against City, Cason, and Lewis: *Negligent Hiring, Training, Retention & Supervision*

"In order to establish a claim for negligent hiring or retention, a plaintiff must prove that the employer of the individual who committed the allegedly tortious act owed a duty to the plaintiff, that the employer breached that duty, that there was a causal relationship between the harm suffered and the breach of the employer's duty, and that the plaintiff suffered damages." *Penhollow*, 695 A.2d at 1284. It is obvious that neither Cason nor Lewis himself can be considered Lewis's "employer." Moreover, the allegations as to Cason's supervision of Lewis are threadbare and constitute mere conclusions. Consequently, the count will be dismissed

against them.  As for the City, it cannot be sued directly for negligence due to the provisions of the Local Government Tort Claims Act ("LGTCA").  *Beall v. Holloway-Johnson*, 130 A.3d 406, 423 (Md. 2016).  *See also Clea v. Mayor & City Council of Baltimore*, 541 A.2d 1303, 1305 (Md. 1988) (Baltimore City immune in ordinary tort actions, including those sounding in negligence, as to matters classified as "governmental"); *Baltimore Police Dep't v. Cherkes*, 780 A.2d 410, 437-38 (Md. Ct. Spec. App. 2001) (hiring, firing, training, and supervision are discretionary governmental functions).  Count X will be dismissed against all Defendants.

### K.  Count XI against City, Cason, and Lewis:  Negligent Entrustment

Essentially, Knox alleges Lewis was negligently entrusted with the keys to the office. For the reasons stated herein as to Count X, *supra*, the Court concludes that this count also fails to state a claim for relief against the City.  Additionally, Knox has alleged nothing to permit an inference that Cason was the one to entrust Lewis with the office keys, and it may be easily surmised that Lewis did not entrust the keys to himself.  The count will be dismissed against all Defendants.

### L.  Count XII against Lewis:  Assault and Battery

"An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact."  *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Spec. App. 1982), *quoted in Streater v. Maryland*, 724 A.2d 111, 121 n.9 (Md. 1999).  Knox has adequately alleged Lewis assaulted her.  "The gist of the action [of battery] is not hostile intent but the absence of consent to the contact on plaintiff's part."  *McQuiggan v. Boy Scouts of America*, 536 A.2d 137, 141 (Md. Ct. Spec. App. 1988), *quoted in Streater*, 724 A.2d at 121 n.9.  Knox has also sufficiently alleged Lewis battered her. Lewis's request to dismiss Count XII will be denied.

What is left in Knox's case are Counts I and II, which allege Title VII violations against the City; Count IV, now limited to an equal-protection claim against Lewis in his individual capacity for sexual harassment; Count V, the MFEPA claim against the City; Count VII, alleging a state law equal-protection claim against Lewis; Count VIII, now limited to a gender discrimination claim against the City; and Count XII alleging assault and battery of Knox by Lewis.

## VI. Sufficiency of the Counterclaim

Overall, Knox contends Lewis's suit should be dismissed in its entirety as a "SLAPP suit," citing Md. Code Ann., Cts. & Jud. Proc. § 5-807 (LexisNexis 2013). (Knox's Mot. Supp. Mem. 5, ECF No. 24-1.) SLAPP stands for "strategic lawsuit against public participation," section 5-807(a), and such a suit is barred if it is

> (1) Brought in bad faith against a party who has communicated with a federal, State, or local government body or the public at large to report on, comment on, rule on, challenge, oppose, or in any other way exercise rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body or any issue of public concern;

> (2) Materially related to the defendant's communication; and

> (3) Intended to inhibit or inhibits the exercise of rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights.

Section 5-807(b). Further, the statute provides immunity to a defendant in a SLAPP suit:

> A defendant in a SLAPP suit is not civilly liable for communicating with a federal, State, or local government body or the public at large, if the defendant, without constitutional malice, reports on, comments on, rules on, challenges, opposes, or in any other way exercises rights under the First Amendment of the U.S. Constitution or Article 10, Article 13, or Article 40 of the Maryland Declaration of Rights regarding any matter within the authority of a government body or any issue of public concern.

Section 5-807(c).

Knox has cited no cases from either Maryland appellate courts, or this Court, or the Fourth Circuit in which this law is discussed. Research reveals a near dearth of cases construing and applying Maryland's anti-SLAPP statute. Both cases found by the undersigned's research were decided in this Court, and they are helpful in determining the merit of Knox's motion to dismiss on this point. *See Ugwunonye v. Rotini*, Civ. No. PJM-09-658, 2010 WL 3038099 (D. Md. July 30, 2010); *Russell v. Krowne*, Civ. No. DKC-08-2468, 2010 WL 2765268 (D. Md. July 12, 2010). As was true in those cases, at this stage of the proceedings, the Court is unable to rule definitively that this is a SLAPP suit. No discovery has occurred, and the Court has been provided with no evidence that Lewis's counterclaim is brought in bad faith and is intended to inhibit Knox in the exercise of her right to petition the government or to speak on a matter of public concern. All that is presently before the Court are Knox's bare allegations to that effect. Further, although much of Lewis's counterclaim is not meritorious under the prevailing pleading standard of Rule 8(a), he has pled a nonfrivolous claim of battery against Knox, and that is sufficient to warrant denial of Knox's motion to dismiss. *See Garlock Sealing Techs., LLC v. Simon Greenstone Panatier Bartlett, P.C.*, No. 3:14-cv-116, 2015 WL 5148732, at *4 (W.D.N.C. Sept. 2, 2015) (construing Texas and California anti-SLAPP statutes and applying Rule 12(b)(6) standard for determining whether case had merit), *appeal dismissed*, No. 15-2178 (4th Cir. Sept. 7, 2017); *ABLV Bank v. Ctr. For Advanced Def. Studies, Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *2 (E.D. Va. Apr. 21, 2015) ("A SLAPP is a meritless civil action"; construing District of Columbia's Anti-SLAPP Act).

## A. Count I : Malicious Use of Process

In this count, Lewis claims that Knox initiated two administrative proceedings against him without probable cause and that she was motivated in initiating those proceedings after Lewis rebuffed her overtures. (Countercl. ¶¶ 47, 48, 49.) The Maryland Court of Appeals has set forth the five elements of this tort:

> First, a prior civil proceeding must have been instituted by the defendant. Second, the proceeding must have been instituted without probable cause. Probable cause for purposes of malicious use of process means "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of." Third, the prior civil proceeding must have been instituted by the defendant with malice. Malice in the context of malicious use of process means that the party instituting proceedings was actuated by an improper motive. As a matter of proof, malice may be inferred from a lack of probable cause. Fourth, the proceedings must have terminated in favor of the plaintiff. Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.

*One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997) (citations omitted).

The *Guerriero* opinion goes on to note, "In Maryland, the term 'malicious use of process' means malicious prosecution of a civil claim." *Id.* at 955. Lewis fails to satisfy the first element of the tort because whatever administrative complaints Knox may have asserted through DOT did not constitute "prosecution of a civil claim." Although Lewis might have been disciplined as a result of an administrative complaint, he would not have been found liable to Knox, and liability is the essence of a civil claim. *See also Wesko v. G. E. M., Inc.*, 321 A.2d 529, 531 (Md. 1974) ("'Malicious use of (civil) process is where a plaintiff in a civil proceeding employs the court's process in order to execute the object which the law intends for such a process to subserve, but proceeds maliciously and without probable cause'" (citation omitted)); *Walker v. Am. Sec. & Trust Co. of Washington, D.C.*, 205 A.2d 302, 307 (Md. 1964) (applying concept of

civil process to writ of habeas corpus used to procure personal presence before court of son and mother when mother's appointed conservator objected to son's removing mother to different location).

Even if the administrative complaints could be viewed as "civil proceedings," Lewis's claim fails on the fifth element of the tort—he has not alleged he was arrested or imprisoned or that he had property seized or that he suffered "other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action." *Guerriero*, 694 A.2d at 956. *See also Walker*, 205 A.2d at 308 ("Mere annoyance and the expense of defending a civil action are not enough. . . ."). Count I will be dismissed for failure to state a claim for relief.

### B. Count II: Tortious Interference in a Contractual Relationship

This count is premised upon Lewis's alleged "contractual relationship with the City of Baltimore to provide his best efforts to effectively manage and oversee vital public safety functions including school crossing guards, and parking enforcement" (Countercl. ¶ 54), in other words, his employment relationship with the City. This count also fails.

"A claim for tortious interference with contract requires that the defendant know of an existing contract and engage in improper conduct to induce a third party's breach of that contract." *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013). "This tort has five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991).

Lewis alleges he decided he no longer wished to work for the DOT and resigned in February 2016. (Countercl. ¶ 41.) Consequently, he has not alleged the necessary third element

of the tort, *i.e.*, that the City breached whatever contract he may be deemed to have had.  As a result, Count II fails to state a claim for relief.

### C. Count III:  Fraud

In this count, Lewis implausibly claims Knox defrauded him by filing the instant suit and misrepresenting therein "the nature and substance of the interaction" between them.  (Countercl. ¶ 61.)

To prevail on a claim for fraud, a plaintiff must show:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Gourdine v. Crews*, 955 A.2d 769, 791 (Md. 2008).  As the *Gourdine* opinion emphasized, "in order to sustain a cause of action based on fraud or deceit, the defendant must have made a false representation *to the person defrauded*."  *Id.*  Lewis alleges Knox made false representations *to the Court* in her characterization of their relationship.  Further, he has not alleged that any misrepresentations made by Knox were made for the purpose of defrauding Lewis.  Neither has he alleged he relied on the alleged misrepresentation and thereby suffered injury.  Clearly, then, he has failed to allege necessary elements of the tort, and Count III will be dismissed.

### D. Count IV:  Defamation

Knox's motion to dismiss points out that Maryland's statute of limitations requires that an action for defamation be brought within one year of the alleged defamation.  (Knox's Mot. Supp. Mem. 16.)  Since Lewis's counterclaim was filed on July 18, 2017, and since the defamatory communications of which he complains occurred from February 2014 to February

2015 and in December 2015, his claim of defamation clearly falls outside the one-year limitation period.  Count IV will be dismissed.

### E.  Count V:  Wrongful Interference in a Contractual Relationship

Count V duplicates Count II, which was predicated upon alleged tortious interference with a contractual relationship.  For the same reasons Count II fails to state a claim for relief, Count V will also be dismissed.

### F.  Count VI:  Intentional Infliction of Emotional Distress

In this count, Lewis repeats his allegations of sexual harassment by Knox and also alleges Knox "knew or reasonably should have known that her statements, charges and allegations were reasonably calculated to cause psychological and emotional harm to" Lewis, her "conduct was intentional, reckless and in deliberate disregard of a high degree of probability that emotional distress would result to" Lewis, and her conduct "was extreme and outrageous and beyond the bounds of decency in society."  (Countercl. ¶¶ 82-85.)

Intentional infliction of emotional distress ("IIED") hinges on the presence of four elements:

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

*Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).

Lewis's Count VI is, at best, a formulaic recitation of the required elements of IIED. Therefore, Count VI will be dismissed for failure to state a claim for relief.

### G.  Count VII:  Harassment

The Court knows of no general tort of "harassment" recognized in Maryland.  *See Davidson-Nadwodny v. Wal-Mart Associates, Inc.*, Civ. No. CCB-07–2595, 2008 WL 2415035, at *3 (D. Md. June 3, 2008).  To the extent Lewis may have intended to claim a violation of Title VII's proscription of sexual harassment, he may not sue fellow employees for alleged actionable conduct; he may only sue the employer, which he has not done.  *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998).  Count VII will be dismissed.

### H.  Count VIII:  Tortious Interference in a Marital Relationship

Again, the Court cannot find any viable Maryland precedent for the tort claimed by Lewis in Count VIII.  The closest analogue seems to be alienation of affections, but that tort was abolished by the Maryland General Assembly in 1945.  *See Doe v. Doe*, 747 A.2d 617, 622-23 (Md. 2000).  Count VIII will be dismissed.

### I.  Count IX:  Battery

This is the one count in Lewis's counterclaim that survives Knox's motion to dismiss.  Lewis has adequately pled that Knox made unconsented, offensive contact with his person.  Her motion to dismiss will be denied as to Count IX.

## VII.  Conclusion

The City's motion to dismiss and Lewis's motion to dismiss Knox's amended complaint will be denied as to the following:  Counts I and II alleging Title VII violations against the City; Count IV insofar as it asserts an equal-protection claim against Lewis in his individual capacity for sexual harassment; Count V alleging an MFEPA violation against the City; Count VII alleging a state law equal-protection claim against Lewis for sexual harassment; Count VIII

insofar as it asserts a gender discrimination claim against the City; and Count XII alleging assault and battery of Knox by Lewis. Otherwise, these motions will be granted.

Knox's motion to dismiss Lewis's counterclaim will be granted as to all counts except Count IX. A separate order follows.

DATED this 29th day of November, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge